AO 102 (01/09) Application for a Tracking Warrant

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

In the Matter of the Tracking of )
*(Identify the person to be tracked or describe* )
*the object or property to be used for tracking)* )
AN ORANGE DODGE RAM 1500 PICKUP TRUCK )   Case No. **23 MR 1362**
WITH NEW MEXICO LICENSE PLATE NUMBER )
BKCZ41 AND VIN 1C6RR7MT2HS590753 )

**APPLICATION FOR A TRACKING WARRANT**

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of __21__ U.S.C. § __841(a)(1), 846__. Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

☑ The person, property, or object is located in this district.

☐ The person, property, or object is not now located in this district, but will be at the time of execution.

☐ The activity in this district relates to domestic or international terrorism.

☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

☑ evidence of a crime;

☑ property designed for use, intended for use, or used in committing a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ a person to be arrested or a person who is unlawfully restrained.

☑ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:
An orange Dodge Ram 1500 pickup truck bearing New Mexico license plate BKCZ41 and VIN 1C6RR7MT2HS590753; 2515 Gun Club Rd. SW, Albuquerque, New Mexico, 87105

☑ Delayed notice of __90__ days (give exact ending date if more than 30 days: __10/09/2023__) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Brandi Texeira*
Applicant's signature

Brandi Texeira, HSI Special Agent
Applicant's printed name and title

Sworn telephonically and signed electronically.

Date: July 11, 2023

*Karen B. Molzen*
Judge's signature

City and state: Albuquerque, New Mexico

Honorable Karen B. Molzen, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE TRACKING OF AN ORANGE DODGE RAM 1500 PICKUP TRUCK WITH NEW MEXICO LICENSE PLATE NUMBER BKCZ41 AND VIN 1C6RR7MT2HS590753 | Case No. _____<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Brandi Texeira, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the installation and monitoring of a tracking device on an orange Dodge Ram 1500 pickup truck bearing New Mexico license plate number BKCZ41 and vehicle identification number (VIN) 1C6RR7MT2HS590753 ("the SUBJECT VEHICLE"). Based on the facts set forth in this affidavit, I believe that the SUBJECT VEHICLE is presently being used in furtherance of violations of, *inter alia*, 21 U.S.C. § 841(a)(1), that being distribution of and possession with intent to distribute a controlled substance, and 21 U.S.C. § 846, that being conspiracy; and that there is probable cause to believe that the installation of a tracking device on the SUBJECT VEHICLE and use of the tracking device will lead to evidence, fruits, and instrumentalities of the aforementioned crimes, as well as to the identification of individuals who are engaged in the commission of those and related crimes.

2. I am a Special Agent ("SA") with the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), currently assigned to the High Intensity Drug Trafficking Area ("HIDTA") group. I have been employed as

a SA with HSI since February 2019. As a special agent with HSI, my primary duty is to conduct investigations of drug-trafficking and other controlled substances violations. Prior to my employment with HSI, I was a certified police officer and supervisor for ten years in the state of New Mexico. I received a Bachelor of Science degree in Criminal Justice from New Mexico State University in 2007.

3. I have training and practical experience pertaining to federal criminal procedures, federal criminal statutes, United States Immigration and Nationality law, United States Customs laws and regulations, and other federal and state laws pertaining but not limited to: The importation and distribution of controlled substances, bulk cash smuggling, firearms, wire fraud, alien/human smuggling and trafficking, and conspiracy. I am authorized and presently assigned to investigate controlled substance violations, including violations of 21 U.S.C. § 841(a)(1). I have attended the Criminal Investigator Training Program and the Homeland Security Investigations Special Agent Training Program at the Federal Law Enforcement Training Center in Brunswick, Georgia.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

5. The United States, including HSI, is conducting a criminal investigation of Oscar "Pancho" SUAREZ (SUAREZ) and other known and unknown individuals involved in his drug trafficking organization (DTO) regarding possible violations of, *inter alia*, 21 U.S.C. § 841(a)(1),

that being distribution of and possession with intent to distribute a controlled substance, and 21 U.S.C. § 846, that being conspiracy.

6. In November 2022, HSI received information from two HSI cooperating defendants (CD-1 and CD-2) [1] that SUAREZ sells and distributes ounce to kilogram quantities of cocaine in Albuquerque, New Mexico. In furtherance of this investigation and at the direction of agents, CD-1 and CD-2 established communications with SUAREZ to conduct controlled purchases of narcotics from SUAREZ.

7. In December 2022, CD-1 and CD-2 conducted a controlled purchase of 4.5 ounces of cocaine from SUAREZ. Prior to the meeting, CD-1 and CD-2 were searched for contraband with negative results. SUAREZ arrived at the agreed-upon meeting location in Albuquerque, New Mexico, driving the SUBJECT VEHICLE. SUAREZ was alone in the SUBJECT VEHICLE and provided the cocaine directly to CD-1 and CD-2 in exchange for $3,000 in official funds. CD-1 and CD-2 subsequently provided the cocaine to agents. It field-tested positive.

8. In January 2023, CD-1 and CD-2 conducted a controlled purchase of 4 ounces of cocaine from SUAREZ. Prior to the meeting, CD-1 and CD-2 were searched for contraband with negative results. SUAREZ arrived at the agreed-upon meeting location in Albuquerque,

---

[1] CD-1 and CD-2 are currently cooperating with law enforcement in exchange for consideration on potential drug trafficking charges. Both CD-1 and CD-2 have personal knowledge of SUAREZ's drug trafficking activities. Their information has been corroborated independently by agents, through surveillance, intercepted wire communications, and the controlled purchases described below. CD-1's criminal history includes an arrest for being an inadmissible alien, for which no disposition is listed, as well as an arrest in Mexico for property crimes, for which no disposition is listed. CD-2's criminal history includes are arrest for being an inadmissible alien, for which no disposition is listed.

New Mexico, driving the SUBJECT VEHICLE. SUAREZ was alone in the SUBJECT VEHICLE and provided the cocaine directly to CD-1 and CD-2 in exchange for $3,000 in official funds. CD-1 and CD-2 subsequently provided the cocaine to agents. It field-tested positive. CD-1 and CD-2 also advised agents that they both observed a dark-colored handgun located in the center console of the SUBJECT VEHICLE. Based on my training and experience, I know it is common for narcotics traffickers to bring or carry firearms during the commission of violations 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846, in order to safekeep or protect their narcotics and proceeds from possible "rips" or robberies during the commission of narcotics trafficking.

9. On June 8, 2023, and days prior, CD-2 set up a controlled purchase of 3,000 fentanyl pills from SUAREZ. This time, an undercover agent (UCA) with the Drug Enforcement Administration (DEA) met with SUAREZ who arrived at the agreed-upon meeting location in Albuquerque, New Mexico, driving the SUBJECT VEHICLE. SUAREZ was alone in the SUBJECT VEHICLE and provided the fentanyl to the UCA in exchange for $6,000 in official funds. The fentanyl subsequently field-tested positive. After this transaction, surveillance agents followed SUAREZ in the SUBJECT VEHICLE and he ultimately arrived at the residence of 2515 Gun Club Rd. SW, Albuquerque, NM 87105. Agents observed the SUBJECT VEHICLE pull into the garage of this residence.

10. All of the aforementioned transactions took place in Bernalillo County, New Mexico, within the District of New Mexico.

11. A law enforcement database check on the SUBJECT VEHICLE reveals that it is currently registered in the District of New Mexico to SUAREZ, with a listed address of 1467

Peppoli Loop SE, Rio Rancho, NM 87124.  Additional law enforcement database checks reveal that this address is a residence previously associated with SUAREZ.

12. In early July 2023, SUAREZ contacted CD-2 to discuss setting up another sale of illegal drugs.  Agents plan to pursue this controlled purchase in the coming weeks.

13. Based on the observations described above, I believe the SUBJECT VEHICLE is presently within District of New Mexico.

14. In order to track the movement of the SUBJECT VEHICLE effectively and to decrease the chance of detection during surveillance, I seek authorization to place a tracking device on the SUBJECT VEHICLE while it is in the District of New Mexico.  SUAREZ is believed to reside at the residence of 2515 Gun Club Rd. SW, Albuquerque, NM 87105. Records received from utility companies show that SUAREZ is listed as a customer for both electric and gas at this residence.  The SUBJECT VEHICLE has never been observed parked in the driveway of this residence, and agents believe SUAREZ parks the SUBJECT VEHICLE in the garage of this residence, as witnessed after the controlled purchase on June 8, 2023. However, in the event that the SUBJECT VEHICLE is parked in the driveway and/or in the open on the private property of 2515 Gun Club Rd. SW, Albuquerque, NM 87105 (but not in an enclosed structure like the garage), it may be necessary to enter onto this private property and/or move the SUBJECT VEHICLE to effect the installation, repair, replacement, and removal of the tracking device.

15. To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the court authorize installation, maintenance, and removal of the tracking device during both daytime and nighttime hours.  SUAREZ owns and works at a barbershop, The Man Cave Barbershop, located at 1513 Eubank Blvd. NE, Albuquerque, New

Mexico. During surveillance of this business, agents have observed the SUBJECT VEHICLE parked in front of this business during daytime business hours. This is a public parking lot that is plainly visible to onlookers, which may make it impossible to safely and covertly install the tracking device during daytime hours. Furthermore, according to SUAREZ's criminal history, SUAREZ was arrested in March 2018 for unlawful carrying of a deadly weapon, which agents later learned was a firearm. This occurred when he was arrested for driving while impaired (DWI). In addition to this arrest, agents were made aware that SUAREZ did have a firearm in his possession during the controlled purchase of narcotics in January 2023, as described above. Due to these facts and observations, agents may have to install, maintain, and remove the tracking device outside of daytime hours in order to do so safely.

16. In the event the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period not to exceed 45 days following issuance of the warrant. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

## AUTHORIZATION REQUEST

17. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorizes members of HSI or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device on the SUBJECT VEHICLE within the District of New Mexico within 10 days of the issuance of the proposed warrant; to maintain, repair, and/or replace the tracking device as necessary; to remove the tracking device from the SUBJECT VEHICLE after the use of the tracking device has ended; to install, maintain, and remove the tracking device during both

daytime and nighttime hours; to surreptitiously enter the private property of 2515 Gun Club Rd. SW, Albuquerque, New Mexico, 87105, and/or move the SUBJECT VEHICLE to effect the installation, repair, replacement, and removal of the tracking device; and to monitor the tracking device for a period of 45 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the District of New Mexico.

18. In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for 90 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. The investigation of SUAREZ and his DTO remains at an early stage, and agents anticipate continuing the investigation in a covert manner for at least 90 days after the end of the authorized period of tracking. Therefore, providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

19. This affidavit has been reviewed and approved by AUSA Lou Mattei.

[Signatures on next page]

Respectfully submitted,

*Brandi Texeira*
_____
Brandi Texeira
Special Agent
Homeland Security Investigations
Department of Homeland Security

Subscribed and sworn telephonically and signed electronically on July __11__, 2023.

_____
Honorable Karen B. Molzen
United States Magistrate Judge